NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|   |   |   |
|---|---|---|
| GREGORY OLIVER, | : | Civil Action No. 04-4219 (JAG) |
| Petitioner, | : |   |
| v. | : | **O P I N I O N** |
| ROY L. HENDRICKS, et al., | : |   |
| Respondents. | : |   |

**APPEARANCES:**

    GREGORY OLIVER, #295179A
    New Jersey State Prison
    P.O. Box 861
    Trenton, New Jersey  08625
    Petitioner pro se

    TERRY BOGORAD, Senior Assistant Prosecutor
    PASSAIC COUNTY PROSECUTOR'S OFFICE
    401 Grand Street
    Paterson, New Jersey  07505-2095
    Attorneys for Respondents

**GREENAWAY, JR.**, District Judge

    Gregory Oliver filed a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254(a), challenging a judgment of conviction in the Superior Court of New Jersey. Respondents filed an Answer, arguing that the Petition should be dismissed on the merits. Petitioner filed a Traverse.  For the reasons expressed below, this Court shall dismiss the Petition with prejudice and decline to issue a certificate of appealability.  See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

## I.  BACKGROUND

Petitioner challenges a judgment of conviction, filed on November 8, 1996, in the Superior Court of New Jersey, Law Division, Passaic County, after a jury convicted him of first degree robbery and aggravated assault.[1]  The Law Division sentenced Petitioner to a life sentence with no eligibility for parole under the Persistent Offender Accountability Act or Three Strikes Law, N.J. Stat. Ann. § 2C:43-7.1a.  Petitioner appealed, challenging the constitutionality of the Persistent Offender Accountability Act.  The Appellate Division of the Superior Court of New Jersey affirmed.  State v. Oliver, 316 N.J. Super. 592 (App. Div. 1998).  The Supreme Court of New Jersey granted certification and, on February 28, 2000, affirmed.  The Court ruled that the Three Strikes Law was constitutional, and that Petitioner's 1979 pre-code robbery conviction qualified as a "strike."  State v. Oliver, 162 N.J. 580 (2000).

On or about November 1, 2000, Petitioner filed a State petition for post-conviction relief in the Law Division.  After conducting an evidentiary hearing, on April 16, 2002, the Law Division denied relief.  Petitioner appealed and in an opinion filed January 23, 2004 the Appellate Division affirmed the order denying post-conviction relief.  State v. Oliver, No. A-5400-01T1 slip op. (App. Div. Jan. 23, 2004).  The Supreme Court of New Jersey denied certification on June 4, 2004.  State v. Oliver, 180 N.J. 453 (2004)  (table).

Petitioner executed the Petition which is now before this Court on August 26, 2004.  The Clerk received it on August 31, 2004.  This Court notified Petitioner of the consequences of

---

[1] According to the New Jersey Supreme Court, on December 10, 1995, Petitioner struck the victim in the head with a metal pipe and stole $100 and crack cocaine.  State v. Oliver, 162 N.J. 580, 584 (2000).  The assault caused a blood clot in the brain of the victim and permanent brain damage.  Id.

filing such a Petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA") and gave him an opportunity to withdraw the Petition and file one all-inclusive Petition, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). The Petition presents eleven grounds, which are set forth below verbatim:

> Ground One: AN INADEQUATE JURY INSTRUCTION ON ACCOMPLICE LIABILITY, WHICH FAILED TO EXPLAIN THAT DEFENDANT HAD TO SHARE THE PURPOSE TO COMMIT AN ARMED ROBBERY RATHER THAN A ROBBERY, DEPRIVED DEFENDANT OF THE RIGHT TO DUE PROCESS OF LAW AND A FAIR TRAIL. U.S. CONST. AMEND. XIV.
>
> Ground Two: IMPROPER SUMMATION COMMENTS, DESIGNED TO INVOKE SYMPATHY FOR A VIRTUOUS VICTIM, DEPRIVED DEFENDANT OF THE RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL. U.S. CONST. AMEND. XIV.
>
> Ground Three: THE STATE FAILED TO ESTABLISH THAT DEFENDANT WAS ELIGIBLE FOR AN EXTENDED TERM OF LIFE IMPRISONMENT WITHOUT PAROLE.
>
> Ground Four: THE MANDATORY EXTENDED TERM SENTENCE OF LIFE WITHOUT PAROLE IMPOSED UNDER NEW JERSEY'S "THREE STRIKE" LAW, N.J.S.A. 2C:43-7.a, CONSTITUTED CRUEL AND UNUSUAL PUNISHMENT. U.S. CONST. AMENDS. VIII, XIV.
>
> Ground Five: THE VIDEOTAPED DEPOSITION WAS EXTREMELY DEFECTIVE, PREJUDICIAL, UNRELIABLE AND VIOLATED RIGHT TO CONFRONTATION UNDER N.J. COURT RULE 3:13-2(B)(C); AND NEW JERSEY RULES OF EVIDENCE, RULE 804(A)(B).
>
> Ground Six: JUDGE FALCONE'S INVOLVEMENT IN STATE WITNESS CASE WAS BIAS PREJUDICE DUE TO HIS PARTICIPATION IN CO-DEFENDANT'S VIDEOTAPE DEPOSITION AGAINST APPELLANT.

>Ground Seven: STATE WITNESS EXTRA-JUDICIAL TESTIMONY WHICH CONSTITUTED IN-COURT IDENTIFICATION WAS INADMISSIBLE NOTWITHSTANDING PRIOR INCONSISTENT HEARSAY STATEMENT.
>
>Ground Eight: WHETHER TRIAL COURT SHOULD HAVE GAVE JURY INSTRUCTION ON IDENTIFICATION, WHERE MISIDENTIFICATION WAS POSSIBLE IN VIOLATION OF THE DEFENDANT'S DUE PROCESS OF LAW.
>
>Ground Nine: THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT.
>
>Ground Ten: TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ADVISE THE DEFENDANT OF THE PENAL CONSEQUENCES CONCERNING THE THREE STRIKES LAW, WHICH RESULTED IN THE DEFENDANT NOT ACCEPTING THE PLEA BARGAIN THAT HAD BEEN OFFERED AND WHICH WOULD HAVE LED TO A SHORTER TERM OF INCARCERATION.
>
>Ground Eleven: COUNSEL WAS INEFFECTIVE FOR NOT REQUESTING PROPER JURY CHARGES AND THUS THE CHARGE TO THE JURY IN ITS ENTIRETY WAS CONFUSING, MISLEADING AND PREJUDICED THE DEFENDANT.

(Pet., Addendum II, Grounds I to XI.)

The State filed an Answer, arguing, inter alia, that the Petition should be dismissed on the merits. Petitioner filed a Traverse.

## II. STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

4

> [A] district court shall entertain an application for a writ of habeas
> corpus in behalf of a person in custody pursuant to the judgment of
> a State court only on the ground that he is in custody in violation of
> the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.[2]  Nor may the Court recharacterize a ground asserted under state law into a

---

[2] See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to  consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

5

federal constitutional claim.[3]  "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim."  Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citation omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

A district court must give deference to determinations of state courts.  Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996).  Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary."  Stevens v. Delaware Correctional Center, 295 F.3d 361, 368 (3d Cir. 2002).  Where a federal claim was "adjudicated on the merits"[4] in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

---

[3] See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

[4] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (quoting Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001)).  A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  Rompilla, 355 F.3d at 247.

>	(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable. Id. at 409-10.

A court begins the analysis by determining the relevant clearly established law. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

### III.  DISCUSSION

A.  Instructions

In Ground One, Petitioner asserts that the instruction on accomplice liability for first degree robbery violated due process because the judge did not properly explain that defendant had to share the purpose to commit an armed robbery. He argues:

> Although the judge noted that he would later explain that responsibility as an accomplice may be equal and the same as who actually committed the crimes or there may be responsibility in a different degree, the promised explanation was never provided. Instead the judge immediately asserted that the theory of accomplice liability was that both defendants were equally responsible for the crime charged. Nothing in the instructions suggested that the jurors might find one defendant guilty of armed robbery and the other guilty of robbery.

(Pet., Addendum II at 7.)

In rejecting Petitioner's challenge to the accomplice liability instructions, the Appellate Division found:

> As a threshold matter, it is questionable whether an accomplice liability charge should have been given at all in this case because neither the State nor defendant presented that scenario . . . . Even if the judge should have instructed the jury that it could convict defendant of the lesser included offense of second degree robbery as Fisher's accomplice if it found that defendant's purpose was only to participate in the robbery, and not to commit armed robbery, the failure to give a *Bielkiewicz* charge is not plain error where a jury could not reasonably conclude that defendant was an accomplice. Here, there was no evidence presented that the principal may have acted with a different purpose than the accomplice. Hence, even if the judge should have more fully instructed the jury on accomplice liability, the error was harmless.

State v. Oliver, 316 N.J. Super. at 597.

In Ground Eight, Petitioner asserts that the failure to instruct the jury on identification violated due process because the primary issue in the case was one of identification. The Appellate Division rejected this claim on direct appeal without discussion.

8

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). As the Third Circuit explained,

> It thus follows that for the error of state law in the justification instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the instructions did not satisfy that body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it.

Johnson, 117 F.3d at 110.

Petitioner is not entitled to habeas relief on Grounds One or Eight because he does not point to a federal requirement that jury instructions must include the requested particular provisions, nor does he show that the absence of these instructions deprived him of a defense which federal law provided to him. Johnson at 111. Moreover, Petitioner has not shown that the state's adjudication of his claims was contrary to, or involved an unreasonable application of,

9

Supreme Court precedent. Under these circumstances, he is not entitled to habeas relief on Grounds One and Eight.

B.  Extended Term

In Grounds Three and Four, Petitioner challenges the imposition of an extended term, i.e., a life sentence without parole, under the Persistent Offender Accountability Act. In Ground Three, Petitioner argues that the New Jersey courts erred in finding that he had three predicate convictions under the Act. The New Jersey courts found that Petitioner's 1973 and 1979 "pre-Code robbery convictions under N.J.S.A. 2A:141-1 were each for a crime that is substantially equivalent to a crime of first-degree robbery, and therefore should be counted as strikes." State v. Oliver, 162 N.J. at 592. Habeas relief is not warranted because eligibility for an extended term under the Persistent Offender Accountability Act is a question of state law. See Chapman v. United States, 500 U.S. 453, 465 (1991) (under federal law, "the court may impose . . . whatever punishment is authorized by statute for [an] offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment"); see also Wainwright v. Goode, 464 U.S. 78 (1983).

In Ground Four, Petitioner argues that the mandatory term of life imprisonment without parole, imposed under the Persistent Offender Accountability Act for Petitioner's third robbery conviction, was contrary to, or an unreasonable application of, clearly established Eighth Amendment jurisprudence, as determined by the Supreme Court.

This argument fails, however, because the Supreme Court specifically rejected this argument in Lockyer v. Andrade, 538 U.S. 63, 77 (2003) (because the gross disproportionality

10

principle under the Eighth Amendment "reserves a constitutional violation for only the extraordinary case," in applying this principle for § 2254(d)(1) purposes, the Supreme Court held that it was not an unreasonable application of clearly established Eighth Amendment law for the state court to affirm petitioner's sentence of two consecutive terms of 25 years to life for a "third strike" conviction).  Further, Petitioner cites no Supreme Court precedent presenting a contrary view to Lockyer.

C.  Prosecutorial Misconduct

In Ground Two, Petitioner argues that the prosecutor's statements during summation violated due process because they improperly invoked sympathy for the victim.  Specifically, Petitioner argues that "[t]he prosecutor's extensive praise of the victim's good character and use of his own experience to help others was nothing less than an inflammatory appeal for sympathy.  The prosecutor was not content simply to point to the victim's efforts to change his life and his drug use.  He went so far as to tell the jurors that the counseling and assistance to children should drive their analysis in this case."  (Pet., Ground Two.)

The record shows that in his summation, defense counsel noted that the victim's credibility was affected by his criminal record.  (Defendant's Appellate Division Brief on Direct Appeal at 13; Ex. 3 to Answer)  As he began his summation, defense counsel argued:

> I recall Abraham Lincoln saying during the course of the civil war when things weren't going too good for the union, that he who stands alone stands best.  Well, I'm here with him and we are standing alone against the power of the State of New Jersey.  Don't you think that I feel sorry for Leon Johnson?  So he's a crack dealer, so he deals in drugs, so he's got five convictions, at least.  But no one should undergo that type of injury, nor the treatment that he had to undertake.

11

(Transcript of Sept. 19, 1996, p. 11, lines 7 to 14.)

    The prosecutor responded to this argument in his summation:

> Mr. Kaiser began his remarks by referring to Leon Johnson, "Baldy," as a crack head and by applying to him a number of descriptions which were somewhat disparaging, somewhat suggesting, I submit, that he was some sort of lesser being who was not entitled to the protection of the law, that he is and was some sort of lesser being who is not worthy of your attention, is not worthy of the law, is not worthy of the protection that the law provides not only to you to me, but to him as well. And nothing could be further from the truth....

(Transcript of Sept. 19, 1996, page 19, lines 4 to 12.)

    The Appellate Division rejected both claims without discussion on direct appeal.

    Prosecutorial misconduct may "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Where "specific guarantees of the Bill of Rights are involved, [the Supreme] Court has taken special care to assure that prosecutorial misconduct in no way impermissibly infringes them." Id. at 642. The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process. Darden v. Wainwright, 477 U.S. 168, 182 (1986); Donnelly, 416 U.S. at 644; Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001).

    In this case, the prosecutor's comments about the victim were made in response to an argument raised by the defense. However, the prosecutor's comments did not infect the trial with unfairness as to make the resulting conviction a denial of due process under Donnelly, 416 U.S. at 643. Thus, Petitioner is not entitled to habeas relief under Ground Two.

12

D.  Confrontation Clause

In Ground Five, Petitioner asserts that the trial judge's admission of a videotaped deposition of Petitioner's co-defendant violated his rights under the Confrontation Clause. Respondents argue that the admission of the videotaped testimony of co-defendant Fisher did not violate the Confrontation Clause because Fisher was unavailable at trial and defense counsel cross-examined him during the videotaped deposition.

The admissibility of evidence is generally a question of state law.  See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001); Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978). However, the Sixth Amendment's Confrontation Clause confers rights that cannot be satisfied merely by meeting the requirements of the rules of evidence.  The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."  This guarantee applies to both federal and state prosecutions. Pointer v. Texas, 380 U.S. 400 (1965).  The Confrontation Clause prohibits the admission of out-of-court testimony unless "the declarant is unavailable, and . . . the defendant has had a prior opportunity to cross-examine."  Crawford v. Washington, 541 U.S. 36, 68 (2004); see also United States v. Lore, 430 F.3d 190, 209 (3d Cir. 2005); United States v. Hinton, 423 F.3d 355, 358 (3d Cir. 2005).

In this case, the record shows that, prior to trial, the state moved to depose James Fisher, Petitioner's co-defendant, by videotape because Fisher suffered from cancer and might not live to testify at trial.  On July 24, 1996, Fisher's oncologist testified that Fisher had a recurrence of a locally invasive malignancy of the tongue, that he was not physically fit to receive additional chemotherapy or radiation therapy, that he was terminally ill, and it was likely that he would not

13

survive longer than six months.  After cross-examining the oncologist, Petitioner's attorney stated that he did not object to deposing Mr. Fisher.  (Transcript of July 24, 1996, p. 49, lines 23-25.)  Fisher was brought into court and his deposition was videotaped.  Although it was difficult for Fisher to speak, Petitioner's attorney cross-examined him.  Fisher answered the questions posed by using hand gestures and garbled speech.  Petitioner was present during the deposition. (Id., pp. 78 to 97.)

On September 10, 1996, during the trial, the trial court conducted a hearing outside the presence of the jury on the admissibility of James Fisher's deposition.  After hearing testimony and cross-examination of Fisher's physician and his sister, the trial judge watched the videotaped deposition.  The next day, the trial judge allowed the videotaped deposition to be shown to the jury, finding that because Fisher was unavailable to testify at that time, Petitioner's Sixth Amendment confrontation rights were not violated.

Admission of the videotaped deposition did not violate the Confrontation Clause because Fisher was unavailable to testify at trial and he was cross-examined on the videotape.  See Crawford, 541 U.S. at 51; Hinton, 423 F.3d at 359.  Because the admission of a videotaped deposition was not contrary to, or an unreasonable application of, the Supreme Court's Confrontation Clause precedent, Petitioner is not entitled to habeas relief on Ground Five.

E.  Judicial Bias

In Ground Six, Petitioner argues that the judge who entered the order permitting the videotaped deposition of James Fisher was biased because the judge was also involved in the criminal proceeding against Jamie Sisco, another co-defendant.  However, a judge's failure to sua sponte disqualify himself does not rise to the level of a constitutional claim.  See Liteky v. United

States, 510 U.S. 540, 551 (1994) ("Also not subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant"); United States v. Schreiber, 599 F.2d 534 (3d Cir. 1979) (trial judge did not commit plain error in failing sua sponte to recuse himself in a non-jury criminal trial where judge had previously presided over a jury trial in which same defendant had been found guilty of similar charges).

Here, the judge's failure to sua sponte disqualify himself was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court, Petitioner is not entitled to habeas relief on Ground Six.

F.  Admission of Evidence

Petitioner argues in Ground Seven that "State Witness Extra-Judicial Testimony Which Constituted In-Court Identification Was Inadmissible Notwithstanding Prior Inconsistent Hearsay Statement." (Pet., Ground 7.) As factual support, Petitioner asserts that the admission of Jamie Sisco's testimony that he was present during the crime and that Petitioner was a participant was inconsistent with Sisco's prior written statement read to the grand jury. The government argues that Ground Seven does not state a federal claim and that, in any event, Sisco's inconsistent statements inured to Petitioner's benefit.

Petitioner does not assert that the admission of Sisco's testimony violated his federal constitutional rights, and the admissibility of evidence is generally a question of state law which is not cognizable under habeas review. See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was

15

properly allowed under the state law of evidence"); Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978) ("As to the contention that the trial court erred in admitting the victim's testimony of a prior flirtatious conversation, we find that, if there was any error in the court's ruling . . . that error was at best one of interpretation of the state's law of evidence and did not []rise to constitutional dimensions").

The state court's adjudication of Petitioner's claim regarding the admission of Sisco's testimony did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Petitioner is not entitled to habeas relief under Ground Seven.

G.  Ineffective Assistance of Counsel

In Grounds Nine, Ten, and Eleven, Petitioner argues that trial counsel was constitutionally ineffective in failing to investigate properly, failing to ensure that the table in the room where the incident occurred was tested for fingerprints, failing to object to the introduction of prejudicial hearsay testimony from Detective Jordan, failing to advise Petitioner that he was subject to a life term under the Persistent Offender Accountability Act before Petitioner rejected a plea offer of 20 years, and failing to request proper jury charges.

The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. Id. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. "A convicted defendant making a claim of ineffective assistance

16

must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id. Second, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

In this case, Petitioner presented his ineffective assistance of counsel claims on post-conviction review. The Appellate Division rejected these claims for the reasons set forth by Judge Riva in his letter opinion of March 26, 2002. State v. Oliver, No. A-5400-01T4 slip op. (App. Div. Jan. 23, 2004). Judge Riva conducted an evidentiary hearing on Petitioner's ineffective assistance of counsel claims and heard the testimony of defense counsel. Judge Riva determined that Petitioner had not shown deficient performance or prejudice.

> Applying the Strickland-Cronic-Fritz standard to the facts of this case, I hold . . . that Oliver has failed to prove by a preponderance of the credible evidence that either his trial or appellate counsel was constitutionally ineffective. There is no credible evidence that either trial or appellate counsel was "deficient." The record is devoid of evidence suggesting a complete denial of Oliver's right to counsel. In fact, Oliver does not assert such a claim. Likewise, no credible evidence exists that Oliver was "actually prejudiced." In other words, there is no rational basis for me to conclude that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceedings would have been different . . . .

(Opinion of Law Div. dated March 26, 2002, Ex. 16 to Answer.) [5]

---

[5] For example, Judge Riva determined that counsel was not deficient in failing to have the table tested for fingerprints because "the failure of the State to secure such evidence inured to Oliver's benefit since there was no fingerprint or DNA evidence tending to inculpate Oliver by
(continued...)

17

This Court has carefully reviewed the record on post-conviction review regarding Petitioner's claim that counsel failed to inform him during plea negotiations of his exposure to an extended term as a persistent offender. The Third Circuit has held that counsel's failure to inform the defendant about his sentencing exposure constitutes deficient performance. See Baker v. Barbo, 177 F.3d 149 (3d Cir. 1999) ("we must hold that an attorney who does not know the basic sentence for an offense at the time that his client is contemplating entering a plea is ineffective"); United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992).

Petitioner's trial counsel testified before Judge Riva. Judge Riva found that counsel knew during plea negotiations that the prosecution intended to seek an extended sentence under the Persistent Offender Accountability Act, that counsel informed Petitioner about the applicability of the Act, and that Petitioner rejected the state's initial plea offer of 20 years, with 10 years of parole ineligibility, based upon his belief that Fisher's health would prevent him from testifying against Petitioner.

Factual determinations, such as those made by Judge Riva, "are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

Judge Riva's factual determinations are not objectively unreasonable in light of the testimony heard by Judge Riva, and Petitioner has not presented clear and convincing evidence to

---

[5](...continued)
placing him at the crime scene." p. 14.

the contrary.  Under these circumstances, Petitioner has not shown that the advice he received was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer."  Day, 969 F.2d at 43; see also Hill v. Lockhart, 474 U.S. at 56-57; Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) ("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered").

Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims because he has not shown that the adjudication of the claims by the New Jersey courts resulted in a decision that was contrary to, or involved an unreasonable application of, Supreme Court jurisprudence.

H.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, this Court shall dismiss the Petition with prejudice and decline to issue a certificate of appealability under 28 U.S.C. § 2253(c).

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: May 31, 2006